UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**MICHAEL S. LITTLE**                        **CASE NO.: 08-CV-1021**

**VS.**                                                  **JUDGE DOHERTY**

**USAA CAS. INS. CO.**                     **MAGISTRATE JUDGE METHVIN**

**REPORT & RECOMMENDATION ON USAA'S
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**
*(Rec. Doc. 7)*

In this diversity action, plaintiff Michael S. Little claims that defendant USAA Casualty Insurance Company should be required to defend or indemnify him against an action filed by Chevron Global Technology Services Company in California. Before the court is defendant's motion to dismiss for failure to state a claim. The issues have been fully briefed.[1]

**FINDINGS AND CONCLUSIONS**

*Background*

**I.    The Chevron Complaint**

The Chevron complaint, the underlying action to the instant matter, arises out of Little's employment with Chevron. Little, a lawyer, began working for Chevron in 1984 in various legal positions, first in the United States and then on overseas assignments from about 1996 through the spring of 2003. (Rec. Doc. 17, ¶ 8). Chevron alleges that Little accepted a position with it in Venezuela in 1999 which was subject to a Labor Contract and an Expatriate Agreement. (Id., ¶¶ 10-14). Chevron terminated plaintiff's employment on December 31, 2003.

---

[1] Defendant filed a motion to dismiss on October 6, 2008 (Rec. Doc. 7). Plaintiff filed an opposition on October 21, 2008. (Rec. Doc. 11). Defendant filed a reply on November 17, and plaintiff filed a sur-reply on December 5, 2008. (Rec. Docs. 16, 19).

On May 4, 2004, Little sued Chevron in a Venezuela court, seeking statutory employment severance benefits. (Id., ¶¶ 15-16). The Venezuelan action concluded in Little's favor.

Thereafter, on May 16, 2006, Chevron filed suit against Little in California, alleging that Little violated both the Labor Contract and the Expatriate Agreement which each required that any employment-related claims be filed in California. (Id., ¶ 17). Chevron also alleges that the parties' agreements contain implied covenants of good faith and fair dealing which plaintiff breached by filing suit in Venezuela rather than California. (Id., ¶¶ 26-30).

**II.   Plaintiff's Complaint**

Little alleges the following facts: when he resided in Arizona in 2003, USAA sold him a Homeowners and an Umbrella policy obligating USAA to defend and pay suits brought against him for damages caused by an *occurrence* causing *personal injury* as defined under the policies. The policies unambiguously define *occurrence* and *personal injury* to include *malicious prosecution.* On June 8, 2006, Little was served with a complaint filed against him by his former employer, Chevron Corporation affiliates in the U. S. District Court for the Northern District of California. On its face, the lawsuit claims damages for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing; however, in reality, the complaint is a retaliatory and constitutes malicious prosecution designed to humiliate, punish, oppress, and force Little to incur substantial legal defense costs. Little notified USAA of this claim as required under policies on June 9, 2006 and requested that notice of coverage be provided by June 22, 2006. By letter dated July 28, 2006 letter, USAA denied coverage.[2] The Venezuelan Supreme Court confirmed the malicious nature of the Chevron lawsuit by holding that Venezuelan courts have exclusive

---

[2] The denial letter is attached to Little's opposition and is dated July 18, 2006.

jurisdiction over Venezuelan labor matters and admonishing Chevron for continuing to contest the jurisdiction of Venezuelan courts. Little notified USAA adjuster P.J. Baker and USAA's Chairman and CEO, Robert G. Davis, that the suit should be classified as a "malicious prosecution;" Baker subsequently denied the claim by fraudulently misquoting the policy terms; Little notified Davis of Baker's unconscionable actions, but Davis did not respond.

Plaintiff seeks damages for USAA's alleged breach of good faith and fair dealing in handling his claim.

USAA seeks a dismissal of Little's complaint because it has no duty to defend or indemnify him against Chevron's suit pursuant to the terms of the insurance policy.

**III.    Fed. R. Civ. P. 12(b)(6) - Motion to Dismiss**

   *A.  Standard of Review*

When deciding a Rule 12(b)(6) motion to dismiss, "[t] he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir.2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " Id. (quoting Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). " 'Factual allegations must be enough to raise a right to relief above the speculative level[.]' " Id. (quoting Bell Atl., 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]." Bell Atl., 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted).

### B. *Whether the Court Can Consider Matters Outside the Pleadings*

USAA attaches copies of the insurance contracts and the Chevron complaint to its memoranda. Little attaches a copy of P. J. Baker, Sr. Litigation Manager's denial letter and a letter from USAA confirming that plaintiff had continuous coverage from since 2003. Neither party objects to the other attachments.

In general, the court may only consider the pleadings and any attachments to the pleadings. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). However, courts may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim because the documents merely assist the plaintiff in establishing the basis of the suit and the court in making the basic determination if plaintiff has stated a claim. Id. at 498-99.

In his complaint, Little refers to the Chevron complaint, the insurance contracts for which he coverage with USAA when Chevron filed its complaint, and the denial letter in his complaint. Moreover, these documents are central to his claim. The documents will therefore be considered in the analysis of the motion to dismiss.

### C. *Choice of Law*

Little requests in his complaint that Arizona law be applied.[3] USAA cites Arizona law but argues that the same result would be reached whether either Arizona or Louisiana state law is applied. Little has not cited any conflict of law between Arizona and Louisiana law. The

---

[3] Rec. Doc. 1, ¶ 12.

controlling legal issues in the case concern the construction of the insurance contract and USAA's duty to defend.

A federal district court with diversity jurisdiction applies the law of the forum state to determine which state's law applies. Mumblow v. Monroe Broadcasting, Inc., 401 F.3d 616, 620 (5th Cir. 2005). Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract, 556 F.3d 282, 286, 2009 WL 130187, 2 (5th Cir. 2009). Because the insurance policies were issued and allegedly breached in Arizona when Little resided there, Arizona law governs unless there is no conflict between Arizona and Louisiana law, in which case Louisiana law applies. Mumblow, 401 F.3d at 620.

Under either Arizona or Louisiana law, when interpreting an insurance contract, the court's role is to determine the intention of the parties.[4] Because an insurance policy is a

---

[4] For Arizona law on insurance policy construction *see* D.M.A.F.B. Federal Credit Union v. Employers Mut. Liability Ins. Co. of Wis., 96 Ariz. 399, 402-403, 396 P.2d 20, 22-23 (Ariz.1964)([t]he cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. In construing an insurance contract, where there is any ambiguity, or more than one possible construction of the provisions thereof, it is to be construed most strongly against the insurer and in favor of the insured. But, where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyo[]nd its plain and ordinary meaning or add something to the contract which the parties have not put there; Sparks v. Republic Nat. Life Ins. Co., 132 Ariz. 529, 536, 647 P.2d 1127, 1134 (Az. 1982) ("[T]he policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.").

For Louisiana law *see* Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580, 2002-1637 (La. 2003) (citations omitted) (An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. . . . An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer).

contract, the terms of the policy must govern, and the court should use the rules of interpretation of contracts.[5] The court should not pervert or violate the language used to expand it beyond its plain and ordinary meaning, and the policy should be read as a whole.[6] Any ambiguity will be construed against the insurer.[7]

As to the duty to defend, the laws of Louisiana and Arizona are essentially the same. In both states, the duty to defend is generally broader than the duty to provide coverage, and arises even if there is a possibility of coverage under the policy. *See e.g.* Steptore v. Masco Const. Co., Inc., 643 So.2d 1213, 1218 (La. 1994) (holding that an insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.); United Services Auto. Ass'n v. Morris, 154 Ariz. 113, 117, 741 P.2d 246, 250 (Az. 1987) (holding that the insurer expressly obligates itself to the insured when issuing a liability insurance contract to defend any claim potentially covered by the policy).[8]

Because Louisiana and Arizona law are in agreement on the principles for interpreting insurance contracts and the duty of a liability insurer to defend its insured, the undersigned finds that Louisiana law should be applied.

---

[5] Id.

[6] Id.

[7] Id.

[8] In Louisiana, the insurer's duty to defend is determined solely from the plaintiffs' pleadings and the policy, without consideration of extraneous evidence. Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1078 (5th Cir. 1992). To the contrary, Arizona decisions "clearly give an insurer the right to make a reasonable investigation of the facts in order to avoid a duty to defend ostensibly imposed by the allegations of the complaint", U.S. Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc., 163 Ariz. 476, 480, 788 P.2d 1227, 1231 (Ariz. App.1989) *citing* Kepner v. Western States Fire Insurance Co., 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973). Here, USAA relies solely on the allegations of the complaint rather than asserting facts outside of the petition; thus, the difference between Arizona and Louisiana law is not relevant to the issues under review. *See* Mumblow v. Monroe Broadcasting, Inc.. 401 F.3d 616, 621 (5th Cir. 2005) (considering only the relevant principles of contract interpretation to determine whether Louisiana rather than New York law should apply).

*Analysis*

I.  **Indemnification**

USAA issued several Homeowner's policies of insurance to Little for four annual periods beginning in April 27, 2004 and concluding on April 27, 2008.[9] Each of the policies contain identical language and bear the same policy number. The policies provide liability to coverage to plaintiff consistent with its terms, including the Personal Injury Endorsement. Little argues that under the plain language of the policy, USAA is obligated to defend and indemnify him against the Chevron action. Endorsement E of the Homeowner's Policy which provides personal liability coverage to Little provides in relevant part:

A.  **The Homeowner's Policy**

> For an additional premium, SECTION II - LIABILITY COVERAGES, **COVERAGE E - Personal Liability** is deleted and replaced by the following:
>
> **COVERAGE E - PERSONAL LIABILITY**
>
> If a claim is made or a suit is brought against any insured for damages because of bodily injury, **property damage** or **personal injury** caused by an **occurrence** to which this coverage applies we will:
>
> 1.  Pay up to the limit of liability for the damages for which the insured is legally liable; and
>
> 2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claims or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from the occurrence equals out limit of liability. This coverage does not provide defense to any insured for criminal prosecution or proceedings.
>
> * * * *

---

[9] USAA issued Homeowner's policies to plaintiff for the policy periods from April 27, 2004 through April 27, 2005; April 27, 2005 through April 27, 2006; April 27, 2006 through April 27, 2007; and April 27, 2007 through April 27, 2008, all bearing Policy No. CIC 002638688490A. (Rec. Doc. 7-2, Rec. Doc. 16, Exh. A, B, C).

The following definition is added:

Personal Injury means:

* * * *

    g.    malicious prosecution or humiliation.

* * * *

"**occurrence**" means:

* * * *
    b.    an event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, neither expected nor intended from the standpoint of the insured.

**B.    The Umbrella Policy**

In addition to the Homeowner's policies, USAA also issued to plaintiff Umbrella Policies for several annual periods, effective beginning February 8, 2005 with coverage ultimately concluding on February 9, 2009.[10] The Umbrella Policy provides in relevant part:

> We will pay for damages an **insured** becomes legally obligated to pay in excess of the **retained limit**. This obligation must arise from an **occurrence** not excluded by this policy. **We** will not pay for punitive or exemplary damages, fines or penalties.
>
> * * * *
>
> If a claim is made or suit is brought against any **insured** for damages caused by an **occurrence** to which Liability Coverage applies, **we** will provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent. However, **we** will not provide this coverage if the **occurrence** is covered by **underlying insurance** or any other liability insurance to any **insured**.

---

[10] USAA initially contended that Little's policy had lapsed before the Chevron complaint was filed in 2006. Chevron concedes that Little had continuous coverage under the Homeowner's policy from April 27, 2004 through April 27, 2008 and under the Umbrella Policy from February 8, 2005 through February 8, 2009. Thus, this issue is moot.

An "occurrence" is defined in the same way as the Homeowner's policy.[11] "Personal injury" means injury other than **bodily injury** arising out of:

    a. Libel, slander, defamation of character, humiliation, malicious prosecution, invasion of rights of privacy.[12]

### C. Coverage or Not?

Little argues that a plain reading of Section b. of the Personal Injury Endorsement, Definitions, is that the:

> <u>occurrence</u> of Chevron's unexpected, malicious, and retaliatory lawsuit against Michael Little was an <u>event</u> which was <u>proximately caused</u> by Mr. Little's Venezuelan lawsuit for termination of benefits and whistle-blowing related acts, which angered Chevron management. The filing of the malicious and retaliatory lawsuit (thinly veiled as a suit for breach of contract) against Michael Little resulted in <u>personal injury</u> (defined as <u>malicious prosecution</u>) during the policy period.[13]

Little's attempt to characterize the Chevron complaint for breach of contract and covenant of good faith and fair dealing as a malicious prosecution action for which he is covered under the USAA policy is unpersuasive. Personal liability coverage is usually purchased as one of the standard coverages of a homeowner's policy but may be purchased separately. 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON III, LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE, §160. (3rd Ed. 2006).

The risk assumed under personal liability coverage is usually defined broadly as "bodily injury or property damage liability which occurs during the policy period." <u>Id</u>. at 162. General

---

[11] Definition 7(b) provides that an occurrence means: An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **insured**, which results, during the policy period, in **personal** injury, neither expected nor intended from the standpoint of the **insured**. (Rec. Doc. 7-3 at 55).

[12] Id.

[13] Rec. Doc. 11 at 4.

liability policies are also written on an occurrence basis, and the insuring agreement is modified by definitions and exclusions. Id.

Just so, Little's Personal Liability Endorsement establishes that USAA will provide liability coverages to Little for an additional premium. Here, Little's policy provides him liability coverage "because of bodily injury, property damage ***or personal injury*** caused by an occurrence to which this coverage applies." "Personal injury" is defined to include "malicious prosecution," the language upon which Little relies for coverage. "Occurrence" is defined as "an event or series of events . . . proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, ***neither expected nor intended from the standpoint of the insured***.

Here, Little entirely ignores the introductory paragraph which provides the general basis for his coverage. Little claims that the "occurrence" is the Chevron action. This argument does not recognize that in the context of the facts presented, the "occurrence" would have to be: (1) caused by Little as the insured, (2) result in personal injury to Chevron; and (3) be an event or series of events which Little *did not intend*.[14]

Little's argument stands the USAA policy on its head: he contends that the policy should protect him against the consequences of his own intentional act - the lawsuit he brought against Chevron in Venezuela. No rational reading of the policy supports this interpretation.

It is elemental that under Fed. R. Civ. P. 8(A), a plaintiff is required to state his claim. Little has cited no authority for the proposition that a defendant may answer what he believes to be the allegations of the complaint rather than the facts actually alleged. Here, Chevron alleges that it entered into a Labor Contract with Little which provided that any claim under the Contract

---

[14] No issue regarding the coverage for bodily injury or property damage has been raised.

be brought in California and which Little allegedly breached by bringing his Venezuelan action. Chevron also alleges that Little breached the implied covenants of good faith and fair dealing when he brought his action in Venezuela. Chevron has thus alleged a contract and a breach. It is clear that Chevron is bringing a breach of contract action together with the related breach of the covenants of good faith and fair dealing.

Moreover, in order to allege a malicious prosecution action, under either Louisiana or Arizona law, a cause of action for malicious prosecution requires a plaintiff to allege that the defendant brought a lawsuit which was terminated in plaintiff's favor.[15] Here, plaintiff alleges that Chevron is maliciously prosecuting him because of his Venezuela action. Even though plaintiff believes the Chevron complaint to be a malicious prosecution, only after the instant litigation has concluded and only if it terminates in plaintiff's favor, can a *plaintiff* bring a malicious prosecution against Chevron.

Further, Little ignores that an "occurrence" is defined to require that the personal injury be caused by the insured. Endorsement E provides *personal liability* coverage for an *insured's* tortious act , not the opposite where damages suffered personally by Little. Here, the plaintiff alleges that Chevron is maliciously prosecuting *him* and *not* that Chevron is claiming that plaintiff prosecuted Chevron.

Little also argues that Chevron's action for breach of the duties of good faith and fair dealing is an action for tort and, as such, are covered under the policy. Little has not pointed to

---

[15] Arizona law provides that "[t]here are five elements to a claim for wrongful prosecution of a civil action. Plaintiff must prove defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." Bradshaw v. State Farm Mut. Auto. Ins. Co., 57 Ariz. 411, 416-417, 758 P.2d 1313, 1318 - 1319 (Az. 1988). Under Louisiana law, the elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268, 1271 (La.1984).

any provision in the policy that defines personal injury to include these actions, and the court has found none.[16]

Little makes a similar argument that the policy covers him as the defendant in Chevron's breach of contract claim. He argues that the policy language in both the Umbrella Policy and the Homeowner's Policy obligates USAA to pay "damages an insured becomes *legally obligated to pay*." Once again, Little seeks out only the language that supports him. As discussed, Little ignores that the claim must result from an **occurrence**, defined as an event proximately caused by the insured which **results in personal injury**. Little has not pointed to any language in the polices nor has the court has not found language that defines the term "personal injury" to include breach of contract.

Likewise, Little's Umbrella Policy contains substantially similar language that USAA will pay damages that arise from an "occurrence," which is defined identically as in the Homeowner's policy.[17] The undersigned thus concludes that Little's claim is not covered under the Umbrella policy.

Interpreting the policies under either Louisiana or Virginia law, giving the words their plain meaning, and reading the policy as a whole, Little's strained construction of the policy language would lead to absurd results and expand Little's coverage beyond what the parties intended. Accordingly, the undersigned finds that Little's interpretation of the policies lacks merit.

---

[16] "Personal injury" is defined to mean: a) wrongful eviction, wrongful entry; b) libel; c) slander; d) defamation of character; e) invasion of rights of privacy; f) wrongful detention, false arrest or false imprisonment; g) malicious prosecution or humiliation; h) assault and batter if committed by an insured or at his direction to protect persons or property. This applies only when the conduct is not criminal.

[17] Definition 7(b) provides that an occurrence means: An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **insured**, which results, during the policy period, in **personal** injury, neither expected nor intended from the standpoint of the **insured**. (Rec. Doc. 7-3 at 55).

## II. Duty to Defend

### A. USAA's July 18, 2006 Denial Letter

Little alleges in his complaint that USAA's adjuster fraudulently misquoted the policy in its denial letter, and, when USAA failed to investigate further, USAA violated its duty of good faith and should be estopped from arguing Little has no coverage and no duty to defend.

According to Little, USAA stated that it was denying coverage because claim was not based on activities that were accidental in nature. Little ignores USAA's explanations that it was not covering the claim under the policy language because it is not an "occurrence" as a result of "personal injury."[18] Little again ignores policy language, arguing that USAA has an obligation to defend him against the Chevron claim because of the broad language that it will defend him against even groundless, false or fraudulent suits. Little again ignores policy language that USAA will defend him only on claims that result from a defined occurrence.

Under Louisiana law, if the complaint states any claim within the policy coverage's, the insurer is obligated to defend. 15 William Shelby McKenzie & H. Alston Johnson III, Louisiana Civil Law Treatise, Insurance Law and Practice, § 211 (3rd Ed. 2006) citing numerous cases, including <u>Alert Centre, Inc. v. Alarm Protection Services, Inc.</u>, 967 F.2d 161 (5th Cir. 1992). In every case, the insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faith – including the duty to defend the insured against covered claims and to consider the interests of the insured in every settlement. <u>Pareti v. Sentry Indem. Co.</u> 536 So.2d 417, 423 (La.1988).

Under Arizona law, "an insurer . . . may not defend [a claim] that is not fairly debatable. But in defending a fairly debatable claim, an insurer must exercise reasonable care and good

---

[18] Rec. Doc. 11-3, p. 8.


faith." Zilisch v. State Farm Mutual Auto. Ins. Co. , 196 Ariz. 234, 237, 995 P.2d 276, 279 (Az. 2000).

Because the denial letter explained clearly that USAA was denying coverage because it interpreted the policy to the effect that Little's claim is not an "occurrence" because of a "personal injury," and which the court has concluded to be the interpretation that reflects the intent of the parties for which there is not even a possibility of coverage, I find that USAA should not be estopped from asserting any of its arguments and has no duty to defend under the policy.

**B.     June 18, 2006 Letter**

Plaintiff argues that the June 18 letter to him from USAA states that, "the policies may not provide coverage" and that the corollary to this language is that the policies could potentially provide coverage thus triggering the duty to defend. Rather than creating a duty to defend, this language clearly indicates that USAA had not made its final determination of coverage under the insurance contract, and, thus had not determined whether it had an obligation to defend. I therefore find this argument to be meritless.

*Conclusion*

For the foregoing reasons, the undersigned **RECOMMENDS** that USAA's motion to dismiss be **GRANTED** and that Little's complaint be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on July 8, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)