RECEIVED

SEP 1 8 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL S. LITTLE | CIVIL ACTION NO. 08-1021 |
| VERSUS | JUDGE DOHERTY |
| USAA CASUALTY INS. CO. | MAGISTRATE JUDGE METHVIN |

## **MEMORANDUM RULING**

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the "Motion to Dismiss Plaintiff's Complaint for Damages; Breach of Contract; Breach of Implied Covenant of Good Faith; and Bad Faith Dealing With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)" filed by defendant USAA Casualty Insurance Company ("USAA") [Doc. 7] be granted in its entirety and that plaintiff Michael S. Little's complaint against USAA be dismissed with prejudice [Doc. 22].[1] Plaintiff filed an Objection [Doc. 23] to the magistrate judge's Report and Recommendation, and USAA filed a Response to plaintiff's Objection [Doc. 26]. After consideration of the Report, the plaintiff's Objection, and USAA's Response, this Court AFFIRMS the findings and conclusion of the magistrate judge with certain clarifications. Therefore, the instant Motion to Dismiss is GRANTED, and plaintiff's complaint against USAA is DISMISSED WITH PREJUDICE.

---

[1] The instant case was originally assigned to another Article III judge who has since taken senior status. Prior to the time he took senior status, the judge presiding over this case referred the instant motion to the magistrate judge for Report and Recommendation. Five months after the motion was filed and referred to the magistrate judge, the instant case was transferred to this Court. This Court only recently received the instant Report and Recommendation, and the Objections and Responses of the parties.

I.  **Factual and Procedural Background**

The factual background of this matter has been set forth succinctly by the magistrate judge in her Report and Recommendation. For the sake of clarity, this Court notes the following. The plaintiff in the instant matter is a former employee of Chevron Global Technology Services Company ("Chevron"). The underlying action to the instant matter arises out of plaintiff's employment with Chevron. Plaintiff, a lawyer, began working for Chevron in 1984 in various legal positions, first in the United States and then on overseas assignments from about 1996 through the spring of 2003.[2] Chevron alleges plaintiff accepted a position with it in Venezuela in 1999 which was subject to a Labor Contract and an Expatriate Agreement.[3] Chevron terminated plaintiff's employment on December 31, 2003. On May 4, 2004, plaintiff sued Chevron in a Venezuela court, seeking statutory employment severance benefits.[4] The Venezuelan action concluded in plaintiff's favor.

Thereafter, on May 16, 2006, Chevron filed suit against plaintiff in California, alleging plaintiff violated both the Labor Contract and the Expatriate Agreement, which each required that any employment-related claims be filed in California.[5] Chevron also alleges the parties' agreements contain implied covenants of good faith and fair dealing which plaintiff breached by filing suit in

---

[2] *See* Chevron's Complaint against plaintiff, filed in the Northern District of California, Doc. 17, at ¶ 8.

[3] *Id.* at ¶¶ 10-14.

[4] *Id.* at ¶¶ 15-16.

[5] *Id.* at ¶ 17.

2

Venezuela rather than California.[6]

In the instant lawsuit, plaintiff alleges when he resided in Arizona in 2003, USAA sold him a Homeowners Policy and an Umbrella Policy obligating USAA to defend and pay suits brought against him for damages caused by an *"occurrence"* causing *"personal injury"* as defined under the policies. Plaintiff contends the policies unambiguously define *"occurrence"* and *"personal injury"* to include *"malicious prosecution."* On June 8, 2006, plaintiff was served with the Chevron complaint. Plaintiff contends on its face, the Chevron lawsuit claims damages for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing, but in reality, the complaint is retaliatory and constitutes malicious prosecution against plaintiff designed to humiliate, punish, oppress, and force plaintiff to incur substantial legal defense costs. Plaintiff notified USAA of this claim as required under the policies on June 9, 2006 and requested that notice of coverage be provided by June 22, 2006. By letter dated July 28, 2006 letter, USAA denied coverage.

Plaintiff thereafter sued USAA in this Court. In his Complaint, plaintiff alleges USAA has breached the "express terms and conditions of the Policies, and has otherwise denied Plaintiff the insurance coverage in a manner arbitrary, negligent, and without proper cause and in bad faith." Plaintiff further alleges USAA "has ignored its duty of good faith and fair dealing in handling the Plaintiff's claim in the following manner: (a) [r]efusing to review the Policies in good faith to support coverage; (b) [r]efusing to pay claims and benefits [to] which the plaintiff is entitled under the terms of his Policies; (c) [i]ntentionally failing to conduct a reasonable investigation into the claim based on all available information supplied by Plaintiff; (d) [i]ntentionally failed to make reasonable and timely payments in an effort to settle the claims; (e) [i]ntentionally misquoted certain

---

[6] *Id.* at ¶¶ 26-30.

3

provisions of the policies to Plaintiff in an effort to justify denial of coverage constituting smoking gun bad faith. On information and belief, given that the CEO of USAA refused to instruct his general counsel to investigate further, this constitutes fraudulent behavior."

Additionally, plaintiff contends in refusing to defend him, USAA has violated Arizona Revised Statute §20-442 ("Unfair Trade Practices Prohibited"),[7] § 20-443 ("Misrepresentations and False Advertising Policies"),[8] and §20-461 ("Unfair Claim Settlement Practices").[9] Plaintiff

---

[7] Arizona Revised Statute §20-442 states:

> No person shall engage in this state in any trade practice which is prohibited by this article, or defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

A.R.S. § 20-442 (West 2009).

[8] Arizona Revised Statute 20-443 states:

> A. A person shall not make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
>
> 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received.
>
> 2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
>
> 3. Making any misleading representation or any misrepresentation as to the financial condition of any insurer or as to the legal reserve system upon which any life insurer operates.
>
> 4. Using any name or title of any policy or class of policies misrepresenting the true nature of the policy.
>
> 5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.
>
> 6. Referring to the coverage or any of the provisions of chapter 3, article 6 or 7 of this title [FN1] in connection with the sale or attempted sale of any policy of insurance, except in connection with the notice prescribed in § 20-400.10, subsection E, § 20-410, subsection B and § 20-422, subsection C.

4

|     |     |     |
| --- | --- | --- |
| **B.** | | An insurance producer, consultant or third party administrator shall not falsely disclose the method or amount of compensation associated with a health benefits plan as defined in § 20-2301. |

A.R.S. §20-443 (West 2009).

[9] Arizona Revised Statute 20-461 states:

| | | |
| --- | --- | --- |
| **A.** | | A person shall not commit or perform with such a frequency to indicate as a general business practice any of the following: |
| | 1. | Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. |
| | 2. | Failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under an insurance policy. |
| | 3. | Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under an insurance policy. |
| | 4. | Refusing to pay claims without conducting a reasonable investigation based upon all available information. |
| | 5. | Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed. |
| | 6. | Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. |
| | 7. | As a property or casualty insurer, failing to recognize a valid assignment of a claim. The property or casualty insurer shall have the rights consistent with the provisions of its insurance policy to receive notice of loss or claim and to all defenses it may have to the loss or claim, but not otherwise to restrict an assignment of a loss or claim after a loss has occurred. |
| | 8. | Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds. |
| | 9. | Attempting to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. |
| | 10. | Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured. |
| | 11. | Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made. |

seeks "all damages discussed above, including without limitation, all contractual, extra-contractual (tort), and punitive damages." Plaintiff also seeks costs, attorney's fees, penalties and interest pursuant to Arizona Revised Statute §12-341.01.[10]

In the instant motion to dismiss, USAA seeks a dismissal of plaintiff's complaint on grounds it has no duty to defend or indemnify him against Chevron's suit pursuant to the terms of either the Homeowner's Policy or the Umbrella Policy. Specifically, USAA contends the allegations in the

---

> 12. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.
>
> 13. Delaying the investigation or payment of claims by requiring an insured, a claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.
>
> 14. Failing to promptly settle claims if liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
>
> 15. Failing to promptly provide a reasonable explanation of the basis in the insurance policy relative to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
>
> [ . . . ]
>
> D. Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state. It is, however, the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related to this section.

A.R.S. §20-461 (West 2009).

[10] Arizona Revised Statute §12-341.01 states:

> A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. . .
>
> [ . . . ]
>
> D. The court and not a jury shall award reasonable attorney fees under this section.

A.R.S. § 12-341.01 (West 2009).

6

Chevron lawsuit fail to establish (1) liability arising out of "personal injury" as that term is defined in the policies; or (2) "personal injury" caused by an "occurrence."[11]

## II. Applicable Law

As an initial matter, this Court addresses the issue of the applicable law that governs interpretation of the insurance policies at issue. The magistrate judge conducted a choice of law analysis and concluded Louisiana law applies as the law of the forum state, noting Louisiana law and Arizona law do not conflict. *See Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).[12] In his Objections, plaintiff states "Arizona law is applicable to coverage here," but also cites to California and New York law – which are cited as "persuasive authority and the gold standard on insurer duty to defend and bad faith issues." Plaintiff cites Louisiana law "as appropriate."[13] In its Response, USAA contends the policies at issue were delivered to plaintiff in Arizona when he resided there, and, arguably, therefore, Arizona law governs the interpretation of those policies. However, USAA points out the magistrate judge conducted a choice of law analysis and found no conflict between Arizona and Louisiana law with regard to contract interpretation and the insurer's duty to defend. USAA does not appear to dispute the application of Louisiana law.

---

[11] This Court has question as to whether the instant lawsuit should have been brought in California as a third-party demand against USAA. If the issues before this Court involve a factual inquiry – as the parties have couched them – this Court believes the issues are more properly decided by the court in California, which is hearing the Chevron lawsuit against plaintiff. However, as the Court this date concludes the Chevron lawsuit is not an "occurrence" as defined by the policies, this Court's initial concern is lessened.

[12] As the magistrate judge points out, a federal district court with diversity jurisdiction applies the law of the forum state to determine which state's law applies. *Mumblow*, 401 F.3d at 620. Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract, *American Elec. Power Co., Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286, 2009 WL 130187, n.2 (5th Cir. 2009). Because the insurance policies were issued and allegedly breached in Arizona when Little resided there, Arizona law governs unless there is no conflict between Arizona and Louisiana law, in which case Louisiana law applies. *Mumblow*, 401 F.3d at 620.

[13] *See* plaintiff's Objections, Doc. 23, at p. 2.

Specifically, USAA notes the plaintiff has not objected to the magistrate judge's interpretation of USAA"s coverage obligations -- if any – under Louisiana law, nor does plaintiff dispute there is no conflict between Arizona and Louisiana law.

This Court concludes the magistrate judge properly conducted a choice of law analysis and properly concluded that, because there is no conflict between Arizona and Louisiana law with regard to contract interpretation and the duties of the insurer under the facts and circumstances of the instant case, Louisiana law governs the interpretation of the policies at issue pursuant to Fifth Circuit jurisprudence. Therefore, this Court is not bound by cases from other jurisdictions, although this Court notes that, to the extent Arizona law does not conflict with Louisiana law, the outcome would remain the same under an application of Arizona law.

### III. Analysis

The magistrate judge concluded the Chevron lawsuit against the plaintiff in the underlying California litigation does not trigger coverage under either the Homeowner's Policy or the Umbrella Policy issued by USAA, and this Court concludes the magistrate judge's conclusion is correct. Consequently, in support of its Ruling this date, this Court adopts the Report and Recommendation of the magistrate judge, with the following clarification. The Court also issues this Ruling for the purpose of addressing certain of the specific Objections raised by the plaintiff.

#### A. <u>The Plaintiff's Objections</u>

The plaintiff asserts ten objections, which are summarized as follows:

- the magistrate judge improperly analyzed USAA's defense obligation by ignoring

certain policy terms contrary to law;[14]

- the magistrate judge did not consider USAA's defense obligation and fair dealing under Arizona's Unfair Claim Practices Statute;[15] and

- the magistrate judge ignored USAA's bad faith and improperly refused to estop USAA from denying coverage.[16]

---

[14] Plaintiff's Objections related to his arguments concerning USAA's alleged duty to defend are as follows:

| | |
|---|---|
| **Objection No. 1:** | "The Court bases its dismissal recommendation solely on intentional misrepresentations of USAA and a flawed interpretation of <u>one</u> coverage provision addressing indemnity only – not defense coverage." |
| **Objection No. 2:** | "The Court ignores the Policy terms and basic precepts as to duty to defend in recommending dismissal." |
| **Objection No. 3:** | "The Court ignores Louisiana and Arizona-specific principles regarding interpretation of an insurance policy – a contract of adhesion." |
| **Objection No. 4:** | "The Court ignores that there is at least potential indemnity coverage triggering duty to defend." |
| **Objection No.5:** | "The Court ignores that there is not just "potential" -- but actual defense coverage, <u>and</u> indemnity coverage triggering duty to defend." |
| **Objection No. 10:** | "The Court ignores an insurer's legal duty to look for coverage – not only denial of coverage." |

[15] Plaintiff's Objections related to his arguments concerning USAA's alleged duty of good faith and fair dealing under Arizona's Unfair Claim Practices Statute are as follows:

| | |
|---|---|
| **Objection No. 6:** | "The Court ignores the duty of good faith and fair dealing; Arizona Unfair Claims Practices Statute." |
| **Objection No. 7:** | "The Court ignores USAA [sic] breach of [1] the implied covenant of good faith and fair dealing and[2] Arizona Unfair Claims Practices Statute." |

[16] Plaintiff's Objections related to his arguments concerning USAA's alleged bad faith and improper refusal to estop USAA from denying coverage:

| | |
|---|---|
| **Objection No. 8:** | "The Court ignores misrepresentations to the Court as to the validity of the very Policies at issue." |
| **Objection No. 9:** | "The Court ignores USAA [sic] smoking gun bad faith in refusing to estop USAA from denying coverage." |

9

B.   **The USAA Homeowner's and Umbrella Policies**

The USAA Homeowner's policy of insurance that was in effect at all relevant times herein contains a Personal Injury Endorsement, which provides in relevant part:

> **COVERAGE E – Personal Liability**
>
> **If a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury caused by an occurrence to which this coverage applies, we will:**
>
> 1. **Pay up to the limit of liability for the damages for which the insured is legally liable; and**
>
> 2. **Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claims or suit that we decide is appropriate. Our duty to settle or defense ends when the amount we pay or tender for damages resulting from the occurrence equals our limit of liability. This coverage does not provide defense to any insured for criminal prosecution or proceedings.**
>
> **We will not pay for punitive damages or exemplary damages, fines or penalties.**
>
> **The following definition is added:**
>
> **Personal Injury means:**
>
> [ … ]
>
>     g.   **malicious prosecution or humiliation.**
>
> The definition of "occurrence" is deleted and replaced by the following:
>
> "occurrence" means:
>
> a.   **an accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in bodily injury or property damage.**

10

b. an event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, neither expected nor intended from the standpoint of the insured.[17]

The Homeowners Policy itself defines "bodily injury" and "property damage" as follows:

**"bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.**

**"property damage" means physical damage to or destruction of tangible property, including loss of use of this property.[18]**

In addition to the Homeowners Policy, USAA also issued an Umbrella Policy to plaintiff, which provides in relevant part:

### Liability Coverage

**We will pay for damages an insured becomes legally obligated to pay in excess of the retained limit. This obligation must arise from an occurrence not excluded by this policy. We will not pay for punitive or exemplary damages, fines or penalties.**

[. . .]

### Defense Coverage

**If a claim is made or suit is brought against any insured for damages caused by an occurrence to which Liability Coverage applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. However, we will not provide this coverage if the occurrence is covered by underlying insurance or any other liability insurance available to any insured.[19]**

---

[17] *See* Homeowner's Policy, attached as Exh. "B" to USAA's Motion to Dismiss, Doc. 7, at Bates No. USAA_Little000057.

[18] *See* Homeowner's Policy, attached as Exh. "B" to USAA's Motion to Dismiss, Doc. 7, Bates No. USAA_Little000029.

[19] *See* Umbrella Policy, attached as Exh. "C" to USAA's Motion to Dismiss, Doc. 7, Bates No. USAA_Little000008.

"**Personal injury**" in the Umbrella policy is defined as "**injury other than bodily injury arising out of:**

   a. **Libel, slander, defamation of character, humiliation, malicious prosecution, invasion of rights of privacy.**

   b. **False arrest, false imprisonment, wrongful detention.**"[20]

As the magistrate judge sets forth in detail in the Report and Recommendation, Chevron has filed suit against the plaintiff, its former employee, in federal district court in California, for breach of contract and breach of the covenant of good faith and fair dealing for violating a labor contract and expatriate agreement that allegedly required plaintiff to file suit against Chevron in California.

The Personal Injury Endorsement of the Homeowners Policy states personal liability coverage is provided only "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury *caused by an <u>occurrence</u> to which this coverage applies . . .*"

"Occurrence" is defined under the Personal Injury Endorsement as "an event or series of events . . . proximately **caused by an act or omission of any insured**, which results, during the policy period, in personal injury, *neither expected nor intended from the standpoint of the insured.*"[21] Plaintiff contends the "occurrence" is the Chevron lawsuit against him. After review of the record, however, this Court concludes the Chevron lawsuit is not an "occurrence" within the meaning of the policy. Indeed, Chevron's lawsuit against the plaintiff cannot be said to have been unexpected, given the language contained within the employment contracts between plaintiff and

---

[20] *See* Definitions Section of Umbrella Policy, Doc. 17, Bates No. USAA_Little000007.

[21] *See* Homeowner's Policy, attached as Exh."B" to USAA's Motion to Dismiss, Doc. 7, at Bates No. USAA_Little000057.

12

Chevron that purport to require plaintiff litigate all disputes with Chevron in California. Plaintiff sued Chevron in Venezuela knowing the venue provisions existed, whether he believed them to be valid or not. Plaintiff cannot now seek the benefit of coverage on grounds a suit to enforce provisions whose presence is not disputed as being found within a contract, that, itself, is not disputed, is *unexpected*. Chevron included the very specific venue provisions in the employment contracts and allegedly incurred damages of more than $50,000 in defending plaintiff's suit against it in Venezuela. Given the undisputed existence of the contracts and the undisputed presence of the venue provisions within those contracts, Chevron's suit to enforce those provisions in the face of plaintiff's actions, cannot be said to be "unexpected."

The coverage grant under the Personal Liability Endorsement of the Homeowner's Policy makes clear coverage is only provided in the event that there is an "occurrence," as follows:

**COVERAGE E – Personal Liability**

> **If a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury <u>caused by an occurrence</u> to which this coverage applies, we will:**
>
> [...]

Similarly, the "Liability Coverage" portion of the Umbrella Policy states "[w]e will pay for damages an insured becomes legally obligated to pay in excess of the retained limit. **This obligation must arise *from an occurrence* not excluded by this policy**." Therefore, because the Chevron lawsuit does not constitute an "occurrence" as defined under the terms of either the Homeowner's Policy or the Umbrella Policy, this Court need not address whether the claim or suit brought against plaintiff by Chevron is a covered claim for "bodily injury," "property damage" or "personal injury" within the meaning of the policies.

13

Considering the foregoing, the objections asserted by the plaintiff contending that coverage is afforded under the policies are OVERRULED.

C. **Duty to Defend**

Plaintiff's arguments that USAA was required to provide him with a defense are similarly OVERRULED. As this Court has found there is no "occurrence" to trigger coverage, ordinarily the duty to defend would not be a consideration. However, as plaintiff argues the Chevron lawsuit is, itself, the occurrence, and the Chevron lawsuit is a malicious prosecution and thus triggers the coverage for "personal injury," the issue of defense of that alleged malicious prosecution – the alleged "occurrence" – becomes, perhaps, relevant for discussion. Generally, an insurer's obligation to defend suits against its insured *for suits brought against the insured* is broader than its liability for damages. Under these somewhat unique facts involving a homeowner's policy, the insurer's duty to defend against a lawsuit argued to be an "occurrence" resulting in "personal injury" is determined from the plaintiff's – here *Chevron's* – pleadings, which Little alleges are a "malicious prosecution," and the face of the policy, without consideration of extraneous evidence. *Graphia v. Schmitt*, 7 So.3d 716, 718 (La. App. 5th Cir. 2009); *Prestenbach v. Badeaux*, 865 So.2d 180, 182 (La. App. 5th Cir. 2003); *Audubon Trace Condominium Ass'n v. Brignac-Derbes, Inc.*, 862 So.2d 157, 159 (La. App. 5th Cir. 2003), *writ denied*, 869 So.2d 822 (La. 2004); *Yount v. Maisano*, 627 So.2d 148, 153 (La.1993). *See also American Home Assurance Company v. Czarniecki*, 230 So.2d 253 (La.1969); *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La.1987). The allegations in a plaintiff's petition – again, here Chevron – are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. *Yount*,

627 So.2d at 153, *citing Benoit v. Fuselier*, 195 So.2d 679 (La. App. 3rd Cir. 1967); *American Home Assurance Company, supra.*

On the face of Chevron's pleadings, it is clear plaintiff and Chevron entered into certain contracts; those contracts contained venue provisions and expatriate provisions designating suit against Chevron must be brought in California; plaintiff filed suit under those contracts not in California, but in Venezuela; Chevron expended monies to defend itself in the Venezuela courts; and Chevron has brought suit against plaintiff alleging breach of those contracts and the select provisions of those contracts. Consequently, *the suit by Chevron* cannot be said, on the face of Chevron's petition, to have been *unexpected*, notwithstanding *whether it is meritorious or not*. Thus, when looking to Chevron's petition, on its face, and the requirement an "occurrence" be "unexpected," this Court concludes the Chevron lawsuit is not an "occurrence" under the meaning of the policy and thus coverage is not owed, nor is the broader duty to defend owed.

Considering the foregoing, this Court AFFIRMS and ADOPTS the findings of the magistrate judge that USAA is not obligated to provide plaintiff with a defense in this matter with the present clarification.

Additionally, with respect to plaintiff's claim the USAA adjuster fraudulently misquoted the policies in USAA's July 18, 2006 denial letter and should therefore be estopped from arguing USAA has no duty to defend, this Court finds plaintiff's argument has no merit, for the reasons set forth in the magistrate judge's Report and Recommendation. This Court's independent review of the denial letter shows USAA explained it was not providing coverage because the activities giving rise to Chevron's lawsuit do not constitute an "occurrence," and that, even if an occurrence existed, the occurrence must result in "bodily injury," "property damage," or "personal injury" as defined in the

15

policy. Because this Court finds, as the magistrate judge found, the plaintiff has cherry-picked certain portions of the denial letter while ignoring other portions of the denial letter which clearly explain and support USAA's denial of coverage, this Court agrees with the magistrate judge's finding that USAA should not be estopped from denying it owes a duty to defend.

D.   **Arizona Unfair Claims Practices Statute/Bad Faith Penalties**

Plaintiff's Objections concerning bad faith penalties under Arizona's Unfair Claim Practices Statute, A.R.S. §20-461, are similarly OVERRULED. Indeed, the question of bad faith is pretermitted by this Court's determination that there is no coverage under the policies. Additionally, as USAA points out in its Response to the plaintiff's Objections, plaintiff has no private right of action under the Arizona Unfair Claims Settlement Practices Statute pursuant to the express language of the statute, to wit:

> **D.**   *Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state.* It is, however, the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related to this section.

A.R.S. §20-461(D) (emphasis added).

Accordingly, the Court concludes plaintiff's claims against USAA for bad faith denial of coverage lack merit.

IV.  **Conclusion**

Considering the foregoing,

IT IS ORDERED THAT the findings and conclusion of the magistrate judge are AFFIRMED, with the clarifications noted herein. Therefore, USAA Casualty Insurance Company's "Motion to Dismiss Plaintiff's Complaint for Damages; Breach of Contract; Breach of Implied

16

Covenant of Good Faith; and Bad Faith Dealing With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)" [Doc. 7] is GRANTED, and plaintiff's complaint against USAA is DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 18th day of September, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE